UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANDREW THAGGARD | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 10-4164 |
| | * | |
| NOBLE DRILLING (U.S.), LLC | * | SECTION "L"(3) |

ORDER AND REASONS

The Court has pending before it Defendant's motion for partial summary judgment (Rec. Doc. 30). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

I.   BACKGROUND

This maritime personal injury action arises out of injuries allegedly sustained by the Plaintiff, Andrew Thaggard, while working as a roustabout in the course and scope of his employment for Defendant aboard a semi-submersible drilling rig called the PAUL ROMANO. The circumstances surrounding the incident are largely undisputed but the parties dispute whether the facts establish any negligence or unseaworthiness of the rig.

The incident occurred when Plaintiff was attaching a MUX cable to the riser to provide fiber optic communications between the drilling rig and the blowout preventer. The MUX cable was to be secured to the riser by clamps attached to brackets which were in turn attached to the riser. The brackets were attached to the riser by someone else at some previous time and it was not Plaintiff's job to attach the brackets to the riser. Rather, Plaintiff's job was to attach the clamps to the brackets and then to guide the MUX cable into the clamps. Because of the delicate coating of the MUX cable, the job required Plaintiff to "palm" the MUX cable and guide it into

place while the reel operator above him maintained the appropriate degree of tension on the MUX cable. Plaintiff and Defendant were both aware of the risk that fingers could be caught in the "pinch point" between the cable and the riser. Accordingly, the evidence suggests that Plaintiff was trained to be aware of pinch points and never to put his fingers between the cable and the riser. Plaintiff had performed this particular job two or three times before.

Plaintiff was stationed in the moon pool and a second employee, Judson Campbell, was on a level above him spooling out the MUX cable from a reel. The MUX cable was fed from the reel through "sheaves" or pulleys which dropped the cable down to Plaintiff. The evidence suggests that the "sheaves" were aligned so that they were not directly above the clamp. Therefore, the MUX cable being fed down to Plaintiff was not entirely parallel to the riser and did not approach the clamp perpendicularly, and that Plaintiff palmed the cable to ensure that it entered the clamp at the correct angle.

During the course of the job, Plaintiff's hand was caught in the "pinch point" between the MUX cable and the riser. According to Plaintiff, the bracket attached to the riser twisted out of position, pinning his fingers between the cable and the riser and causing his injury.

Plaintiff filed suit in this Court alleging negligence under the Jones Act and unseaworthiness under the general maritime law and seeking damages as well as maintenance and cure.

## II.     PRESENT MOTION

Defendant Noble moves for partial summary judgment on the issues of negligence and unseaworthiness. Defendant contends that Plaintiff had been specifically trained to do the job and to safely palm the MUX cable. It argues that according to the undisputed facts Plaintiff's

own negligence is the sole cause of the incident, rather than any negligence on Defendant's part or unseaworthiness of the rig.

Plaintiff responds that there are factual disputes regarding Defendant's negligence and the unseaworthiness of the rig. Plaintiff argues that the MUX cable could have been repositioned to obviate the need to put his hand near any pinch points, and also that the riser brackets had a history of rotating unexpectedly and this posed an unreasonable risk of injury.

### III.    LAW AND ANALYSIS

#### A.    Standard of Review for Motions for Summary Judgment

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-24 (1986)).  The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion.  *See Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted).

**B.     Jones Act Negligence**

Under the Jones Act, an employer has the duty to "provide his seaman employees with a reasonably safe place to work."  *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 475 (E.D. La. 2008) (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989)).  An employer breaches that duty if it fails to exercise ordinary prudence and is thereby negligent.  *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338, 339 (5th Cir. 1997) (en banc).  In other words, an employer breaches its duty if it disregards a danger that it "'knew or should have known.'"  *Colburn*, 883 F.2d at 374 (quoting *Turner v. Inland Tugs Co.*, 689 F. Supp. 612, 619 (E.D. La. 1988)).  Under the Jones Act, the negligence of a fellow employee is imputed to the employer.  *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991) (noting that this leads to "a broad basis for liability"); *see also De Zon v. Am. President Lines, Ltd.*, 318 U.S. 660, 664-65 (1943).  "The standard of care for a Jones Act seaman is to act as an ordinarily prudent seaman would act in like circumstances."  *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001).  Apart from negligence, a plaintiff seeking relief under the Jones Act must show causation.  "A seaman is entitled to recovery under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury."  *Gautreaux*, 107 F.3d at 335.  The Fifth Circuit has observed that this is a "liberal causation requirement," *Brister*, 946 F.2d at 354, one that places a "featherweight" burden on the plaintiff, *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th

Cir. 1975) (quotation omitted).

Defendant relies heavily on the Plaintiff's testimony that he does not blame anyone for the accident:

> Q. There's nothing that the mux reel operator did–
> A. No.
> Q. –that caused this incident?
> A. No.
> Q. You're not blaming him in any fashion?
> A. No. I'm not blaming anybody that was out here on this rig at the time this happened for what happened. This was something that nobody else did. Nobody did this. I mean, it's not like–I'm not saying that the mux reel operator says Hey, look, let's see what we can do today and he came up as quick as he could to pull ... I'm not saying that. Judd wouldn't do that. Judd's not like that. Judd being the ET, the one running the mux reels that day, that time.
> I'm not saying that Judd did this. As a matter of fact, I told Judd I wasn't blaming nothing on him because it wasn't his fault.
> Q. After this incident happened, you never blamed anybody with Noble who is part of this operation, right?
> A. Yeah, I never blamed anybody for what happened. I even told – I mean, the rig manager, everybody asked me Hey, what happened, what happened, what happened? I never once blamed anybody for what happened. The same thing that I told – it's the same thing that happened, it's the same thing I told them, it's the same thing I'll say today because that's the truth, that's what happened. Nobody–no person was responsible for how it happened.

(Rec. Doc. 30-4 at 138:18-140:4). Thus, Defendant argues that Plaintiff cannot come forward with any evidence of an unsafe condition of which Defendant had notice. In the absence of such evidence, the Jones Act claim fails as a matter of law.

In response, Plaintiff articulates two theories of negligence. First, he contends that other riser brackets had twisted on prior occasions and therefore the Defendant was unreasonable in requiring Plaintiff to palm the MUX cable near a pinch point despite the foreseeable risk that the bracket would twist and injure his hand. Plaintiff's co-worker testified that brackets had twisted

on risers in the past due to loose bolts. (Rec. Doc. 34-3 at 21:21-22:4). Plaintiff himself testified that although the bracket twisted in the incident in question, the bolts were not loose and that he does not know why the bracket twisted. (Rec. Doc. 34-4 at 143:2-144:13). The report from Plaintiff's expert does not address the bracket or how it twisted.

In response, Defendant asserts that it was Plaintiff's duty to make sure that the bracket bolts were tightened; Plaintiff's deposition suggests that he did verify that the bracket bolts were tightened, although it is not entirely clear whether it was his job responsibility to do so. *See* (Rec. Doc. 30-4 at 128:3-130:8). However, the record also discloses that when the riser portions came to Plaintiff to attach the clamp and MUX cable, the brackets were already installed. Thus, even if Plaintiff had the responsibility or opportunity to make sure the bracket bolts were tight, there are questions of comparative negligence regarding whether the bracket was properly installed when it came to Plaintiff. Moreover, Plaintiff has testified that the bracket bolts were tight and that some other unknown factor caused the bracket to twist. In short, the cause of and responsibility for the bracket twist are pregnant with factual issues that cannot be resolved on summary judgment, particularly in light of the relaxed standard of causation between Defendant's alleged negligence and Plaintiff's injury. *See Gautreaux*, 107 F.3d at 335; *Brister*, 946 F.2d at 354. The issue may later be appropriate for resolution on a Rule 50 motion depending on the testimony adduced at trial.

Second, Plaintiff argues that the "sheaves," which were between the MUX cable reel and Plaintiff, should have been repositioned to minimize the angle at which the cable approached the clamp and "alleviate" the need to place hands near a pinch point by palming the cable. However, the co-worker who operated the MUX reel testified that even if the sheaves were

repositioned, the job still would have required Plaintiff to palm the cable to guide it into the clamp and prevent damage to the cable. (Rec. Doc. 37-1 at 32:23-33:2, 33:20-34:5). Plaintiff's expert also agreed that protecting the sheathing on the MUX cable required Plaintiff to palm the cable, regardless of where the sheaves were positioned. (Rec. Doc. 37-2 at 21:25-22:13). Thus, the record at this time does not support an inference that if the sheaves were repositioned Plaintiff would not have needed to palm the cable. Moreover, Plaintiff testified that his hands became pinned because the bracket twisted; the evidence does not support an inference that the positioning of the sheaves had anything to do with the movement of the bracket. In short, based on the evidence before the Court at this time there does not appear to be a dispute of fact that the position of the sheaves was not a hazardous condition and did not contribute to the accident.

**C.     Unseaworthiness**

"To establish a claim of unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel . . . which is reasonably fit and safe for the purposes for which it is to be used.'" *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "A vessel's condition of unseaworthiness might arise from any number of circumstances." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). For instance, a vessel may have an unfit crew. *Id.*; *accord Bonmarito v. Penrod Drilling Corp.*, 929 F.2d 186, 189-191 (5th Cir. 1991). A vessel may also be unseaworthy because of "an unsafe method of work." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354-55 (5th Cir. 1988); *accord Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992) (noting that "an unsafe method of work may also render a vessel unseaworthy"). An injured seaman must show something more than an "'isolated, personal

negligent act'" in order to establish that a vessel was unseaworthy, however. *Lambert v. Diamond M Drilling Co.*, 688 F.2d 1023, 1024 (5th Cir. 1982) (quoting *Usner*, 400 U.S. at 500). Consistent with that requirement is the principle that a vessel owner cannot shield itself from liability by simply pointing to the fact that a practice is widespread or accepted. *See Johnson*, 845 F.2d at 1355 ("Customary or normal industry practice alone does not establish seaworthiness.").

Defendant argues that Plaintiff has yet to come forward with any evidence that the bracket or any other appurtenance of the rig was not reasonably fit and safe. In the absence of any such evidence, summary judgment on the issue of unseaworthiness would be appropriate.

In response, Plaintiff articulates two theories of unseaworthiness. First, he again argues that "the sheaves were not properly positioned over the riser to limit or eliminate the angle of the MUX cable in relation to the clamp, alleviating the need to 'palm' the cable as it is fed into the clamp." As explained above, at this time there is insufficient evidence to support any inference that the position of the sheaves rendered them unreasonably fit or unsafe, or had any impact on the incident in question.

Second, Plaintiff argues that "the method of operation which required that the roustabouts 'palm' the MUX cable, placing their hands near a pinch point, also rendered the PAUL ROMANO unseaworthy." Plaintiff does not elaborate on this theory or explain how the MUX cable should have been clamped to the riser without palming the cable, nor does he dispute that he was trained regarding how to palm the cable safely and to avoid pinch points. Certainly, if Plaintiff had not put his hand near the cable his hand would not have been caught between the cable and the riser, but Plaintiff has not explained how or why that method of

affixing the MUX cable was unsafe. Thus, on this record Plaintiff has not articulated a viable theory of unseaworthiness. However, because partial summary judgment is denied as to Jones Act negligence based on factual disputes regarding the condition of the riser bracket, it is not appropriate to grant summary judgment on the issue of seaworthiness at this time. The issue may well present an appropriate basis for a Rule 50 motion at trial.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's motion for partial summary judgment is DENIED.

New Orleans, Louisiana, this 15th day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE